Rod N. Andreason (Utah Bar No. 8853)
Jessica A. Horton (Utah Bar No. 15633)
**KIRTON McCONKIE**
50 East South Temple, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Fax: (801) 321-4893
randreason@kmclaw.com
jhorton@kmclaw.com

Michael R. Gray (pro hac vice forthcoming)
Raymond J. Konz (pro hac vice forthcoming)
**GRAY, PLANT, MOOTY & BENNETT, P.A.**
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3000
Facsimile: (612) 632-4444
michael.gray@gpmlaw.com
raymond.konz@gpmlaw.com

*Attorneys for Plaintiff AlphaGraphics, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALPHAGRAPHICS, INC., a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ULTRA GRAPHICS, LLC, a Montana limited liability company, JACOB L. EATON, an individual, and EMILY E. JONES, an individual,<br><br>　　　　　　　Defendants. | **VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>　　Case No.: _____<br><br>　　Judge: _____ |

Plaintiff AlphaGraphics, Inc. ("AGI"), for its Verified Complaint against Defendant Ultra Graphics, LLC ("UG"), Jacob L. Eaton, and Emily E. Jones (collectively "Defendants"), states and alleges as follows:

## IDENTIFICATION OF PARTIES AND NATURE OF THE ACTION

1.      This action involves trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq.* It also involves breaches of a Franchise Agreement and related agreements between the parties.

2.      AGI is a Delaware corporation with its principal place of business located at 215 South State Street, Suite 320, Salt Lake City, Utah 84111.

3.      Defendant UG is a Montana limited liability corporation which has done business in Utah and has its principal place of at 3413 Gabel Road, Billings, Montana, 59102.

4.      Defendant Jacob L. Eaton is a citizen of Montana, residing in Billings, Montana.

5.      Defendant Emily E. Jones is a citizen of Montana, residing in Billings, Montana.

6.      Upon information and belief, Defendants Jacob Eaton and Emily Jones are currently the sole Members and owners of Defendant UG.

## JURISDICTION AND VENUE

7.      This court has jurisdiction over this action pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

8.      Venue is proper because Defendants have voluntarily consented to venue in the Federal Court in the State of Utah, pursuant to Section 19.F of the Franchise Agreement.  Venue also is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this District.

A.     **The AlphaGraphics® Franchise System**

9.      AGI is the franchisor of the AlphaGraphics® franchise system.

10.     AGI has developed a business system that allows its franchisees to operate business centers specializing in customized print and marketing solutions for businesses and individuals using data drive, multi-channel communications that may require a blend of design, print, web, mobile and social media services ("Business System").

11.     The services provided by AlphaGraphics® franchisees include, without limitation, graphic design, color and black and white offset and digital printing, bindery, mailing and fulfillment, multi-channel marketing communication solutions, e-commerce, large format signage and point of purchase, vehicle wraps, promotional products, direct mailing campaigns, packaging, business identity and brand awareness packages, customer loyalty programs, search engine marketing and optimization solutions, social media and other visual communications services.

12.     AGI makes its AlphaGraphics® Business System available to franchisees through franchise agreements.

13.     AlphaGraphics® franchisees offer their services through business centers using the AlphaGraphics® trademark and related logos and marks (the "AlphaGraphics® Marks" or "Marks"), all of which are owned by AGI.

14.     Currently, approximately 280 AlphaGraphics® business centers exist and operate throughout the United States and abroad.

15.     The AlphaGraphics® Marks are well-known, famous, and have significant value to AGI.

16.     At all relevant times, AGI had the right to use and license others to use the registered AlphaGraphics® Marks and has the right to control their use in accordance with the terms of the Franchise Agreement.

17.     AGI has marketed the goods and services provided under its AlphaGraphics® Marks with appropriate notice indicating that the AlphaGraphics® Marks are registered in the United States Patent and Trademark Office. A true and correct copy of the Certificate of Registration for Trademark Registration Number 1,132,841 is attached as Exhibit A. A true and correct copy of the Certificate of Registration for Trademark Registration Number 1,408,868 is attached as Exhibit B.

18.     Declarations of Use and Renewals were filed in compliance with Sections 8 and 15 of the Trademark Act of 1946, as amended, for trademark Registration numbers 1,408,868 and 1,132,841, which have become incontestable under 28 U.S.C. § 1065.

19.     As a result of AGI's efforts, the AlphaGraphics® Marks and Business System have become associated in the minds of the consuming public with quality customized marketing solutions services.

**B.     The Franchise Agreement and Related Agreements**

20.     Defendant UG entered into a Franchise Agreement with AGI on or around September 20, 2012 ("Franchise Agreement"). The Franchise Agreement granted UG the license and right to own and operate an AlphaGraphics® business center located at 214 N. 30th Street, Billings, Montana 59101 ("Business Center"), and to use the AlphaGraphics® Marks and Business System for a period of 15 years. A true and correct copy of the Franchise Agreement is attached as Exhibit C.

21.     At or about the same time that Defendant UG and AGI executed the Franchise Agreement, UG entered into a Transfer Rider to the Franchise Agreement ("Transfer Rider"). A true and correct copy of the Transfer Rider is attached as Exhibit D.

22.     At or about the same time that UG and AGI executed the Franchise Agreement, Defendant Jacob Eaton entered into an Owner Guaranty ("First Guaranty") in which he personally guaranteed to AGI that he would be personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreement and related agreements, and that he was jointly and severally liable with Defendant UG. A true and correct copy of the First Guaranty is attached Exhibit E.

23.     On or around July 2, 2015 Defendant UG and AGI entered into an Amendment to the Franchise Agreement ("Amendment"). A true and correct copy of the Amendment is attached as Exhibit F.

24.     On or around September 30, 2016, Defendant UG, Defendant Jacob Eaton, and Defendant Emily Jones entered into an Assignment and Consent Agreement Relating to Defendants' AlphaGraphics® Business Center ("Consent Agreement") with AGI and Dustin Frost.  Pursuant to Section 8 of the Consent Agreement, Jacob Eaton agreed and affirmed that the First Guaranty remained in full force and effect with respect to all obligations of Defendant UG arising prior to the Effective Date. A true and correct copy of the Consent Agreement is attached as Exhibit G.

25.     On or around September 30, 2016, Defendant Emily Jones entered a Purchase and Sale Agreement ("Sale Agreement") with Dustin Frost. Pursuant to the Sale Agreement, Dustin

5

Frost sold his 50% interest in Defendant UG to Emily Jones. A true and correct copy of the Sale Agreement is attached as Exhibit H.

26.     At or about the same time Defendants executed the Consent Agreement and Sale Agreement, Defendants Jacob Eaton and Emily Jones entered into an Guaranty and Assumption of Obligations ("Second Guaranty") in which they personally and unconditionally guaranteed to AGI that Defendant UG would perform each and every undertaking, agreement, and covenant stated in the Franchise Agreement and its related agreements, and agreed to be individually and jointly personally bound by, and personally liable for the breach of, each and every provision in the Franchise Agreement and its related agreements, and that they were jointly and severally liable with Defendant UG and each other. A true and correct copy of the Second Guaranty is attached Exhibit I.

**C.     Defendants' Relevant Obligations Under the Franchise Agreement and Related Agreements.**

27.     Pursuant to Section 1.E of the Franchise Agreement, AGI granted to Defendant UG a franchise to operate Defendants' AlphaGraphics® Business Center. In exchange, Defendants promised to use their best efforts to promote and enhance the business of the franchise, and promised they would not engage in any other business or activity that conflicts with its obligations to operate an AlphaGraphics® Business Center.

28.     Pursuant to Section 5.A of the Franchise Agreement, Defendants acknowledged and agreed that their right to use the AlphaGraphics® Marks derived solely from the Franchise Agreement and was limited to conduct of Defendant's AlphaGraphics® Business Center pursuant to and in compliance with the Franchise Agreement and standards, specifications, operating procedures, and rules AGI prescribed from time to time.

29.     Pursuant to Section 5.A of the Franchise Agreement, Defendants acknowledged and agreed that any unauthorized use of the AlphaGraphics® Marks by them constitutes a breach of the Franchise Agreement and an infringement of AGI's rights in and to the Marks.

30.     Pursuant to Section 5.B, Defendants agreed they would not use the AlphaGraphics® Marks (i) in performing or selling any unauthorized services or products, (ii) as part of any online marketing unless authorized by AGI, (iii) in connection with the transfer, sale, or other disposition of Defendants' AlphaGraphics® Business Center, or (iv) in any other manner not expressly authorized in writing by AGI.

31.     Pursuant to Section 7 of the Franchise Agreement, Defendants acknowledged and agreed that, regarding confidential information including site selection criteria, plans and specifications, training programs and materials, System Standards, supply information, computer software programs, customer mailing list prepared by AGI, operating results and financial performance, and data and records relating to customers, some of which constitutes trade secrets ("Confidential Information"), Defendants' use or duplication of this Confidential Information would constitute an unfair method of competition. Defendants therefore agreed not to use this Confidential Information in connection with the operation of any business other than their AlphaGraphics® Business Center.

32.     Pursuant to Section 8 of the Franchise Agreements, Defendants acknowledged and agreed that AGI would not be able to protect its Confidential Information against unauthorized use or disclosure and would be unable to encourage a free exchange of ideas and information among AlphaGraphics® franchisees if AlphaGraphics® franchisees were permitted to hold interests in or perform services for a "Competitive Business," as the term is defined in the

Franchise Agreement. Defendants further agreed that their in-term non-complete obligations were part of the consideration and reliance upon which AGI granted an AlphaGraphics® franchise to Defendants.

33.     Pursuant to Section 8 of the Franchise Agreement, Defendants promised, during the term of the Franchise Agreement, that neither they, their spouse, nor their children, would (1) have any direct or indict interest as a disclosed or beneficial owner of a Competitive Business wherever located; (2) perform services as a director, officer, manager, employee, consultant, representative, agent, or otherwise for a Competitive Business; (3) divert or attempt to divert any actual or potential business or customer from the AlphaGraphics® franchise system to a Competitive business; or (4) engage in any activity that might injure or adversely affect the goodwill of the AlphaGraphics® Marks and/or any AlphaGraphics® Business Center.

34.     Pursuant to Section 17.B of the Franchise Agreement, Defendants agreed that, upon expiration or termination of the Franchise Agreement, Defendants would not directly or indirectly at any time or in any manner identify themselves or any business as a current or former AlphaGraphics® Business Center, or as a franchisee, licensee, dealer, or affiliate of AGI, nor use any of the AlphaGraphics® Marks, any colorable imitation thereof, or other indicia of an AlphaGraphics® Business Center in any manner or for any purpose, or use any Mark or other commercial symbol that suggests or indicates a connection or association between Defendants and AGI.

35.     Pursuant to Sections 5.F of the Franchise Agreement, Defendants are obligated to disclose certain materials with AGI during the term of the Franchise Agreement, agreed and

acknowledged that certain materials are owned by AGI, and agreed to assign ownership of all

other materials to AGI, as follows:

> [UG] agrees to disclose prior to use all trademarks, service marks, slogans, logos,
> source indicators, content, graphics, materials and works of authorship that are
> created or developed by or on behalf of [UG] that arise out of or are related to
> [UG]'s operation of the BUSINESS CENTER or provision of Visual
> Communications Services, ("Content"). [UG] shall own all rights to Content,
> except that [UG] acknowledges and agrees that all Content that includes,
> incorporates or uses (i) one or more Marks, (ii) any Confidential Information (as
> defined in Section 7), (iii) any PrintSmith® Data, and (iv) any Customer Artwork
> (as defined in Section 17.F), will be owned solely and exclusively by [AGI] and
> therefore will not deemed "Content. To the extent that any of the foregoing is not
> deemed to be solely and exclusively owned by [AGI], [UG] shall assign, and
> hereby assigns, his entire right, title and interest in and to the foregoing to [UG].
> [UG] hereby grants to [AGI] and its successors and assigns a worldwide,
> perpetual, irrevocable, fully-paid up, exclusive license, and right to sublicense, to
> use, copy, distribute, display, perform and create derivative works from any and
> all Content in whatever form or medium, whether now known or later invented
> for any purpose in connection with Visual Communications Services.

All information owned by and or assigned to AGI pursuant to Section 5.F of the Franchise

Agreement is hereafter referred to as "Franchisee Materials."

36.     Pursuant to Sections 12.B of the Franchise Agreement, Defendants are obligated

to provide AGI with access to certain customer information, agreed and acknowledged that

certain customer information are owned by AGI, and agreed to assign ownership of all other

customer information to AGI, as follows:

> [UG] is also required, pursuant to the terms and conditions of Section 3 of this
> Agreement, and throughout the term of this Agreement, to use the PrintSmith®
> Software Program or its successor program... The PrintSmith® Software Program
> allows [UG], among other things, to enter customer orders, price customer orders,
> separate work orders and invoices and track aging, collection and customer
> reports and statements. As between the parties, [AGI] shall own all right, title and
> interest in and to all records and data customarily processed by (or retained in the
> databases of) the PrintSmith® Software Program including, without limitation, all
> client and customer lists, customer histories and all other customer-related data
> and information (the "PrintSmith® Data"). To the extent that the PrintSmith® Data

is not deemed to be solely owned by [AGI], [UG] shall assign, and hereby does assign, [its] entire right, title and interest in and to the PrintSmith® Data to [AGI]. The parties further agree that [AGI] shall have the right of continuous access to [UG]'s PrintSmith® Software Program (or successor program) and all PrintSmith® Data, and [UG] agrees to provide [AGI] with such continuous access in the manner specified by [AGI] from time to time. Further, [UG] shall routinely (as frequently as once a month) deliver to [AGI], in a manner and medium specified by [AGI], a complete copy of all of the PrintSmith® Data.

37.     Pursuant to Section 17.F of the Franchise Agreement, Defendants agreed that, in the event that the Franchise Agreement is terminated pursuant to Section 16.A.2, Defendants would immediately deliver copies of all artwork, files, customer and prospective customer information, including customer purchase histories, contact information, customer lists, templates, and other materials in any form or medium provided to Defendants by customers of Defendants AlphaGraphics® Business Center or otherwise collected by Defendants ("Customer Artwork") and all "PrintSmith® Data" to AGI. Defendants acknowledged and agreed that AGI may make use of this Customer Artwork and PrintSmith® Data that it deems fit after termination or expiration, including providing said Customer Artwork and PrintSmith® Data to another franchisee.

38.     Pursuant to Section 18.D of the Franchise Agreement, Defendants agreed to indemnify, defend, and hold harmless AGI against and to reimburse AGI for all claims, obligations, and damages directly or indirectly arising out of the operation of Defendants' AlphaGraphics® Business Center, which include reimbursement of reasonable accountants', arbitrators', attorneys', and expert witness fees, costs of investigation and proof of facts, court costs, other expenses of litigation, arbitration or alternative dispute resolution, and travel time and living expenses.

39.     Pursuant to Section 19.J of the Franchise Agreement, Defendants acknowledged and agreed that damages are an inadequate remedy in the event of breach of Section 5, 7, 8, 17.B, 17.C, 17.D, and 17.E of the Franchise Agreement, and that such breach would cause irreparable injury and damage to AGI. Therefore, Defendants acknowledged and agreed that AGI is entitled to preliminary and permanent injunctive relief arising out of such breach or intended or threatened breach by Defendants.

40.     Pursuant to Section 19.D of the Franchise Agreement, Defendants acknowledged and agreed that, if AGI is required to engage legal counsel in connection with Defendants' failure to submit any report, information, or supporting records, or otherwise comply with the Franchise Agreement, Defendants would reimburse AGI for any and all accounting and legal fees, whether incurred prior to, in preparation for, or in contemplation of, the filing of any written demand, action, hearing, or proceeding to enforce the obligations for the Franchise Agreement.

41.     Pursuant to Sections 2(a), 2(d), 4(a), and 4(b) of the First Guaranty, Defendant Jacob Eaton agreed to be personally bound by the terms of the Franchise Agreement and responsible for UG's obligations arising under the Franchise Agreement, including the obligation to pay AGI's legal fees, costs, and expenses pursuant to Section 19.D of the Franchise Agreement.

42.     Pursuant to Section 6 of the Second Guaranty, Defendants Jacob Eaton and Emily Jones agreed to pay all reasonable attorneys' fees and all costs and other expenses AGI incurred in enforcing the Second Assumption or any negotiations relative to the obligations guaranteed by the Second Guaranty.

**D.      Purported Early Termination**

43.      Pursuant to Section 16.A.2 of the Franchise Agreement, commencing on the third anniversary date of Continuous Operation (as defined by the Franchise Agreement), Defendant UG had the option to buy out and terminate the Franchise Agreement upon written notice provided to AGI at least ninety (90) days prior, but not more than two hundred and seventy (270) days prior, to such anniversary, on the condition that Defendants agreed to wire transfer a buyout amount to be determined pursuant to a formula provided in Section 16.A.2 of the Franchise Agreement prior to the anniversary date on which the Franchise Agreement was to terminate.

44.      Pursuant to Section 5 of the Transfer Rider, the parties amended Section 16.A of the Franchise Agreement to limit Defendant UG's early termination option to the third (3rd) anniversary of the date on which UG commenced Continuous Operation, and to require, if Defendant UG exercised its buy-out/early termination option, payment by Defendants of Fifty Thousand Dollars ($50,000) to AGI at least thirty (30) days prior to the Early Termination Date.

45.      Pursuant to Section 5 of the Amendment, the Transfer Rider was amended by extending the Early Termination Date to September 20, 2017, and the notice period set forth in Section 5 of the Transfer Rider was amended to be ninety (90) days.

46.      On or about June 19, 2017, Defendants sent an email to AGI which stated:

We had some time to consider your proposal this weekend and while I certainly appreciate your efforts to find a solution that works for us and AGI, I think we are still a long way off.

At this point, we feel it is best to give you our formal notice that we intend to exercise our option to terminate our agreement on September 20 in order to preserve that option in the event we are unable to reach an ongoing arrangement. Pursuant to the Amendment to the Alphagraphics Business Centers Franchise Agreement and the Transfer Rider agreement provisions governing the Early Termination Option, we are providing written notice of our intent to exercise the

Early Termination Option within the ninety (90) day notice period. We will be providing payment at least thirty (30) days from the Early Termination Date, as required by the Transfer Rider.

A true and correct copy of Defendants' June 19, 2017 email is attached as Exhibit J.

47.     Defendants' June 19, 2017 email does not constitute a "notice of termination," as required by Section 16.A.2 of the Franchise Agreement, but at best constituted a "notice of intent" to exercise Defendants' Early Termination option at a later date.

48.     On August 10, 2017, less than 90 days before the purported Effective Date of the termination of the Franchise Agreement, Defendants sent an email to AGI stating "[w]e are going to move forward with the early termination option." A true and correct copy of Defendants August 10, 2017 email is attached as Exhibit L.

49.     The purported effective date of the Early Termination is September 20, 2017, which has not yet occurred. Thus, Defendant UG's Business Center is still in operation, and the Franchise Agreement is still in effect.

50.     Defendants have not fulfilled the post-termination obligations contained in the Franchise Agreement.

**E.     Conduct Giving Rise to Breach of Contract and Trademark Infringement**

51.     On August 18, 2017, pursuant to Sections 5.F, 12.B, and 17.F of the terms of the Franchise Agreement, AGI requested from Defendant UG copies of the Customer Artwork and PrintSmith® Data relating to Defendants' AlphaGraphics® Business Center. A true and correct copy of AGI's Demand for Customer Artwork and PrintSmith® Data is attached as Exhibit M.

52.     Despite AGI's contractual entitlement to copies of the Customer Artwork and PrintSmith® Data relating to Defendants' AlphaGraphics® Business Center, Defendants have

failed to provide this information to AGI as required by Sections 5.F, 12.B, and 17.F of the Franchise Agreement.

53.     Defendants have failed to disclose all Franchisee Materials to AGI in violation of Section 5.F of the Franchise Agreement. For example, Defendants did not disclose their use of the AlphaGraphics® Marks on the website for their competing Ultra Graphics business, which arises out of and/or is related to Defendants' AlphaGraphics® Business Center.

54.     Defendants have failed to complete copies of and access to all of the PrintSmith® Data relating to Defendants' AlphaGraphics® Business Center, in violation of Section 12.B of the Franchise Agreement.

55.     Defendants have failed to immediately deliver all Customer Artwork and PrintSmith® Data upon their purported exercise of the Early Termination option pursuant to Section 16.A.2, in violation of Section 17.F of the Franchise Agreement.

56.     Contrary to the intent of Sections 5.F, 12.B, and 17.F of the Franchise Agreement, as a result of Defendants' failure to provide copies of the Franchisee Materials, Customer Artwork, and PrintSmith® Data relating to Defendants' AlphaGraphics® Business Center to AGI, AGI cannot solicit AlphaGraphics® customers to stay with the AlphaGraphics® franchise system and/or reestablish a new franchisee in Defendants' former franchise territory.

57.     In mid-August, 2017, AGI learned that Defendants had set up a competing printing business, operating as "Ultra Graphics," even though the Franchise Agreement has not yet terminated and Defendants' AlphaGraphics® Business Center is still in operation.

58.     Defendants' competing Ultra Graphics business provides the same products and services Defendants provided as AlphaGraphics® franchisees. Ultra Graphics runs out of the

same location as Defendants' former AlphaGraphics® Business Center, and is ostensibly attempting to convert all of the customers of Defendants' former AlphaGraphics® Business Center to their new, competing Ultra Graphics business while Defendants are still enjoying the benefits of the AlphaGraphics® franchise system, in violation of the in-term non-compete obligations contained in Section 8 of the Franchise Agreement.

59.      Defendants maintain two separate websites, one for their AlphaGraphics® Business Center and a separate website for their competing Ultra Graphics business. A true and correct copy of the homepage and "Our Team" page for Defendants' Billings, Montana AlphaGraphics® Business Center website is attached as Exhibit N. A true and correct copy of the homepage for the website for Defendants' new, competing Ultra Graphics business is attached as Exhibit O.

60.      Defendants' website for their new, competing Ultra Graphics business repeatedly displayed the AlphaGraphics® Marks to promote and legitimize their competing Ultra Graphics business, without AGI's permission or authorization:

**AlphaGraphics[®] Billings is becoming Ultra Graphics**

… We are very excited to announce that September 21st, AlphaGraphics[®] Billings will become Ultra Graphics. The transition to our new brand will allow us to take advantage of some exciting new opportunities and add incredible new products and services to our portfolio. This project has been in the works for months, and we'll do our best to ensure that the transition has as minimal impact as possible to you and all our valued customers. You'll still be served by the same great team, with the same commitment to superior quality and innovation – just under a new name….

*Ultra Graphics Re-Brand FAQ:*
**Why are you changing your name?**

While we are truly grateful for the partnership with AlphaGraphics[®], we decided that it was time to expand into our own brand.  We have grown so much since our

doors opened in 1994, and it made sense to transition given our current size, capabilities, and culture. In reality, the name of our business entity was always Ultra Graphics, we just chose to do business as AlphaGraphics[®] Billings. This transition was one back to our original name, but with the same quality products and services as before….

**Are you still a franchise?**

No, Ultra Graphics will be an independently-owned business that is not part of a franchise….

**Will your website change?**

The website will remain mostly the same, with the exception of some cosmetic changes and branding updates.  We also took the opportunity to expand some of our content to better serve you. There might also be some remnants of content or imagery that are AlphaGraphics[®]-specific. With a small business that has 23 years of history under the AlphaGraphics[®] name, there is definitely going to be some residual content and imagery. …

**Can I still use AlphaGraphics[®] coupons that I have?**

We will honor any coupons printed and provided by AlphaGraphics[®] Billings with an expiration date before the end of 2017.  Any AlphaGraphics[®] corporate or other franchise coupons will not be honored.

**I've worked with you in the past as AlphaGraphics[®], will you still have copies of my artwork?**

Absolutely, we maintain an archive of past projects and can access that artwork for new jobs…

A true and correct copy of the "Changes" page from Defendants' Ultra Graphics website is attached as Exhibit P.

61.    Defendants' repeated use and display of "AlphaGraphics[®]" in the advertising and promotion of the competing Ultra Graphics business is a blatant misuse of AGI's federally registered trademarks in an attempt to legitimize Ultra Graphics prior to expiration of the

Franchise Agreement, and to trade on Defendants' association with the AlphaGraphics® Marks and Business System.

62.     The website for Defendants' competing Ultra Graphics business stated that Ultra Graphics "is the destination for all your print and online marketing needs," demonstrating that Ultra Graphics is a Competitive Business which is currently operational and soliciting customers, despite the continuing term of the Franchise Agreements. A true and correct copy of the "Services" page from Defendants' Ultra Graphics website is attached as Exhibit Q.

63.     The website for Defendants' competing Ultra Graphics business also contained a "FREE Quote" function enabling customers to obtain quotations and hire Ultra Graphics to obtain the same products and services from Ultra Graphics that customers receive from AlphaGraphics® franchisees. A true and correct copy of the "FREE Quote" page from Defendants' Ultra Graphics website is attached as Exhibit R.

64.     Defendants have advised other AGI franchisees of their intent to leave the AlphaGraphics® franchise system in an attempt to interfere and/or potentially interfere with AGI's contractual relationship with other AlphaGraphics® franchisees.

65.     On August 16, 2017, AGI wrote to Defendants notifying them of Defendants' breach of the in-term covenant against competition and trademark infringement.  A true and correct copy of AGI's August 16, 2017 email to Defendants is attached as Exhibit S.

66.     On August 18, 2017, AGI wrote to Defendants again, reiterating AGI's request for Defendants to take down inappropriate content on the Ultra Graphics website, and demanding that Defendants provide copies of all Customer Artwork and PrintSmith® Data. In response, on August 21, 2017 Defendant Jacob Eaton replied to AGI, denying that Defendants were operating

a Competitive Business in violation of in-term noncompete provisions of the Franchise Agreement, and denying that Defendants were infringing on AGI's Marks.  Defendant Jacob Eaton confirmed Defendants' obligation to provide copies of Customer Artwork and PrintSmith® Data, but claimed that these copies were not due until September 20, 2017. A true and correct copy of the August 18-21, 2017 email exchange between AGI and Defendants is attached as Exhibit T.

67.     While it appears Defendants have removed AGI's Marks from the website for their competing Ultra Graphics business, the website remains active, and advertises "Ultra Graphics Coming September 21st 2017."  A true and correct copy of the current website for Defendants' competing Ultra Graphics business is attached as Exhibit U.

68.     To date, Defendants are continuing to promote their competing Ultra Graphics business, despite the terms of their Franchise Agreement.

69.     Defendants use of the AlphaGraphics® Marks on the website for their competing Ultra Graphics business demonstrates that, absent injunctive relief, Defendants will continue to infringe on AGI's Marks following termination of the Franchise Agreement.

70.     Defendants' conduct as alleged above has necessitated this lawsuit.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT
### (All Defendants)

71.     The allegations in preceding paragraphs 1 through 70 are hereby incorporated by reference.

72.     Since registering its AlphaGraphics® Marks, AGI has extensively advertised its Marks and trade names in connection with the AlphaGraphics® franchise system. AGI's AlphaGraphics® Marks are famous and well-known.

73. Pursuant to Section 5.A of the Franchise Agreement, Defendants acknowledged and agreed that their right to use the AlphaGraphics® Marks derived solely from the Franchise Agreement and was limited to conduct of Defendant's AlphaGraphics® Business Center pursuant to and in compliance with the Franchise Agreement and standards, specifications, operating procedures, and rules AGI prescribed from time to time.

74. The Franchise Agreement forbids Defendants from using the AlphaGraphics® Marks in connection with a competing business. Specifically, Section 5.B of the Franchise Agreement requires:

**LIMITATION ON FRANCHISEE'S USE OF MARKS.**

 [UG] agrees not to use any Mark … (3) in performing or selling any unauthorized services or products, (4) as part of any … online marketing, including but not limited to metatags, keywords and adwords, that [UG] maintains on the Internet, the World Wide Web … or (5) in any other manner not expressly authorized in writing by [AGI]. [UG] further agrees not to use any Mark in any advertising by [UG] in connection with the transfer, sale or other disposition of [Defendants' AlphaGraphics® Business Center]. All Marks must be displayed in the manner [AGI] prescribes, including notices of trademark registrations.

75. Pursuant to Section 5.A of the Franchise Agreement, Defendants acknowledged and agreed that any unauthorized use of the AlphaGraphics® Marks by them constitutes a breach of the Franchise Agreement and an infringement of AGI's rights in and to the Marks.

76. Defendants have used the AlphaGraphics® Marks in order to promote and legitimize their competing Ultra Graphics business without AGI's permission or authority.

77. Defendants' use of the AlphaGraphics® in conjunction with their competing Ultra Graphics business constitutes willful and intentional infringement of the AlphaGraphics® Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and/or in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

78.     As a result of Defendants' infringement, AGI has been irreparably damaged by the deprivation of the benefit and goodwill attached to AGI's AlphaGraphics® Marks.

79.     Pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §§ 1116 and 1117(a), AGI entitled to a temporary restraining order and permanent injunctive relief preventing Defendants from misusing AGI's registered Marks.

80.     Unless immediate injunctive relief is granted, Defendants will continue to infringe AGI's AlphaGraphics® Marks and trade names and will cause further irreparable injury to AGI from deprivation of the benefit and goodwill attached to AGI's AlphaGraphics® Marks.

81.     In addition to immediate injunctive relief, pursuant to 15 U.S.C. § 1117, AGI is also entitled to recover damages from Defendants caused by their unlawful use of and/or infringement upon AGI's AlphaGraphics® Marks.

<u>COUNT II: UNFAIR COMPETITION</u>
**(Defendants Ultra Graphics, LLC, Jacob Eaton, and Emily Jones)**

82.     The allegations in preceding paragraphs 1 through 81 are hereby incorporated by reference.

83.     Defendants' conduct and actions, as set forth above, constitute unfair competition and misappropriation of AGI's valuable goodwill, reputation, and business property.

84.     AGI has had a long-standing presence in the Billings, Montana market, including the AlphaGraphics® Business Center operated by Defendants since 2012.

85.     Because of AGI's long-standing presence in the Billings, Montana market, the AlphaGraphics® Marks have developed significant goodwill with a substantial number of customers in that market.

86.     Pursuant to Section 5.A of the Franchise Agreement, Defendants acknowledged and agreed that their usage of the Marks and any goodwill established by the Marks inures to AGI's exclusive benefit, and that the Franchise Agreement does not confer any goodwill or other interest in the AlphaGraphics® Marks upon Defendants.

87.     By using and displaying the AlphaGraphics® Marks in association with advertisements for their competing "Ultra Graphics" business, Defendants have engaged in unfair competition and misappropriation of AGI's Marks, AGI's customers and customer goodwill associated with AGI's Marks over the last five years.

88.     As a direct result of Defendants' actions and conduct, as described in the preceding paragraphs, AGI has been damaged and will continue to incur irreparable damage as a result of Defendants' ongoing actions and conduct.

89.     AGI has no adequate remedy at law to protect its substantial business and property rights, and the damages from Defendants' failure to comply with their obligations are considerable and continuing and thus not capable of ascertainment at this time.

90.     AGI is entitled to a temporary restraining order preventing Defendants' unfair competition and misappropriation of AGI's customers and goodwill.

91.     Unless injunctive relief is granted, Defendants will continue to unfairly compete with AGI and will cause further irreparable injury to AGI from deprivation of the benefit and goodwill attached to AGI's AlphaGraphics® Marks.

92.     In addition to injunctive relief, AGI is entitled to an accounting of all of Defendants' revenue and earnings and for damages for Defendants' unfair competition and

unauthorized misappropriation of AGI's customers and goodwill, in an amount to be proven at trial but believed to be in excess of $75,000.

## COUNT III: Breach of Contract
### (All Defendants)

93.     The allegations in preceding paragraphs 1 through 92 are hereby incorporated by reference.

94.     Defendants' conduct described above constitutes multiple breaches of the identified contractual provisions of the Franchise Agreement.

95.     As a result of Defendants' breaches, AGI has suffered and will continue to suffer irreparable injury, and has incurred monetary damage in an amount that is yet to be determined, but believed to exceed $75,000.

96.     AGI is entitled to an award of damages against Defendants, jointly and severally, in an amount to be proven at trial but believed to be in excess of $75,000 for their breach of the Franchise Agreement.

## COUNT IV: BREACH OF CONTRACT - NONCOMPETE
### (All Defendants)

97.     The allegations in preceding paragraphs 1 through 96 are hereby incorporated by reference.

98.     Pursuant to Section 8 of the Franchise Agreement, Defendants agreed to refrain from competing with AGI and the AlphaGraphics® franchise system during the term of the Franchise Agreement. Specifically, Article 8 requires that:

> [UG] therefore agrees that, during the term of this Agreement, neither [UG], any Owner [of UG], nor any spouse or child of [UG] or any Owner will:

(1) have any direct or indirect interest as a disclosed Or beneficial owner in a Competitive Business, wherever located…

(2) perform services as a director, officer, manager, employee, consultant, representative, agent or otherwise for a Competitive Business…

(4) divert or attempt to divert any actual or potential business or customer of the [Defendants' AlphaGraphics®] BUSINESS CENTER or any other ALPHAGRAPHICS® Business Center to a Competitive Business; or

(5) engage in any other activity which might injure or adversely affect the goodwill of the Marks and/or any ALPHAGRAPHlCS® Business Center.

99.     AGI has a legitimate business interest in its valuable Confidential Information, substantial business relationships with existing and prospective customers, and the goodwill associated with the AlphaGraphics® Marks in the territory covered by the Franchise Agreement, as well as the specialized training provided to Defendants as part of AGI's Business System.

100.    In violation of the Franchise Agreement, Defendants are operating a directly Competitive Business, and during the continuing term of the Franchise Agreement, have engaged and are engaging in another business or activity that conflicts with its obligations to operate an AlphaGraphics® Business Center.

101.    As a result of Defendants' breach of the in-term noncompete provisions of the Franchise Agreement, AGI has been damaged and will continue to incur additional damages as a result of Defendants' ongoing actions and conduct.

102.    AGI has no adequate remedy at law to protect its substantial business and property rights.  If Defendants are allowed to operate a Competitive Business in the same territory as their currently-operational AlphaGraphics® Business Center prior to termination of the Franchise Agreement, and to solicit customers away from the AlphaGraphics® franchise system without giving AGI the opportunity to retain these customers through use of the

Customer Artwork and PrintSmith® Data, the damage from Defendants' activities would be considerable and not capable of ascertainment.

103.    Absent injunctive relief, Defendants' activities in operating a directly Competitive Business in Defendants' current territory would cause irreparable harm and damage to AGI in Montana and elsewhere.

104.    The in-term noncompete provisions in the Franchise Agreement are narrowly tailored, reasonable and necessary to preserve the status quo and to protect AGI's legitimate business interests described in this Verified Complaint. The non-competition provisions are no greater than is required for AGI's protection of its legitimate business interests and does not impose any undue hardship on Defendants. The non-competition provisions are not injurious to the public welfare. The issuance of an injunction will promote the public interest by preserving the status quo and allowing AGI to continue its valuable customer relationships, as well as safeguarding its Confidential Information, and preventing unethical and unlawful conduct by AGI's competitors.

105.    AGI is entitled to a temporary restraining order and permanent injunctive relief against Defendants enforcing the in-term noncompete provisions in the Franchise Agreement.

106.    In addition to injunctive relief, AGI is entitled to an award of damages against Defendants, jointly and severally, in an amount to be proven at trial but believed to be in excess of $75,000.

### COUNT V: BREACH OF CONTRACT – FRANCHISEE MATERIALS, CUSTOMER ARTWORK, AND PRINTSMITH® DATA
#### (All Defendants)

107.    The allegations in preceding paragraphs 1 through 106 are hereby incorporated by reference.

108.    Pursuant to Sections 5.F, 12.B, and 17.F of the Franchise Agreement, Defendants agreed to provide Franchisee Materials, Customer Artwork, and PrintSmith® Data to AGI, during the term of the Franchise Agreement and in the event of termination pursuant to Section 16.A.2 of the Franchise Agreement.

109.    Defendants have breached Section 5.F by failing to disclose to AGI all uses of AGI's trademarks, service marks, slogans, logos, source indicators, content, graphics, materials, and works of authorship that are created or developed by or on behalf of UG that arise out of or are related to Defendants' operation of their AlphaGraphics® Business Center.

110.    Defendants have breached Section 5.F of the Franchise Agreement by failing to disclose and provide to AGI copies of all Franchisee Materials.

111.    Defendants have breached Section 12.B of the Franchise Agreement by to provide AGI with access to all PrintSmith® Data, and failed to deliver complete copies of all PrintSmith® Data to AGI.

112.    Defendants have breached Section 17.F the Franchise Agreement by failing to provide copies of the Customer Artwork and PrintSmith® Data to AGI upon notice of their intent to terminate the Franchise Agreement.

113.    This obligation to provide Customer Artwork and PrintSmith® Data to AGI is reasonably necessary to protect AGI's legitimate business interests and its goodwill with existing AlphaGraphics® customers.

114.    As a result of Defendants' failure to provide copies of the Customer Artwork and PrintSmith® Data to AGI, AGI has been damaged and will continue to incur additional damages as a result of Defendants' ongoing actions and conduct.

115.    AGI has no adequate remedy at law to protect its substantial business and property rights, and the damages from Defendants' failure to comply with their obligations are considerable and continuing and thus not capable of ascertainment at this time.

116.    AGI is entitled to a temporary restraining order and permanent injunctive relief enforcing the obligations of the Franchise Agreement and the terms of the Purchase Agreement, and compelling Defendants to provide copies to AGI of the Customer Artwork and PrintSmith® Data associated with Defendants' AlphaGraphics® business.

117.    In addition to injunctive relief, AGI is entitled to an award of damages against Defendants, jointly and severally, in an amount to be proven at trial but believed to be in excess of $75,000.

### COUNT VI: TORTIOUS INTERFERENCE
### WITH CONTRACTS AND BUSINESS RELATIONSHIPS
#### (Jacob Eaton and Emily Jones)

118.    The allegations in preceding paragraphs 1 through 117 are hereby incorporated by reference.

119.    AGI and UG are parties to written contracts in the form of the Franchise Agreement.

120.    Defendants Jacob Eaton and Emily Jones were aware of the existence of the Franchise Agreement between AGI and UG.

121.    Defendants Jacob Eaton and Emily Jones were aware of the obligations contained in the Franchise Agreement, including obligations to refrain from using the AlphaGraphics® Marks in an unauthorized manner, refrain from operating a Competitive Business during the term of the Franchise Agreement, and to provide copies of Customer Artwork and PrintSmith® Data to AGI.

122.    Defendants Jacob Eaton and/or Emily Jones tortiously interfered with AGI's contractual relationship with Defendant UG by establishing and operating a Competitive Business in UG's protected franchise area during the term of the Franchise Agreement, using and displaying AlphaGraphics® trademarks to promote the competing "Ultra Graphics" business, and preventing UG from providing copies of the Customer Artwork and PrintSmith® Data to AGI.

123.    Defendants were aware of real and potential customer contracts and business relationships AGI had with customers of Defendants' former AlphaGraphics® Business Center.

124.    Defendants tortiously interfered with AGI's customer contracts and business relationships by soliciting customers and convincing them to use Defendants' competing Ultra Graphics business instead of AGI or another AlphaGraphics® franchisee during the term of the Franchise Agreement.

125.    Defendants' tortious interference with AGI's contractual rights and business relationships as alleged herein was intentional and without justification.

126.    As a direct result of Defendants' actions and conduct, as described in the preceding paragraphs, AGI has been damaged and will continue to incur additional damages as a result of Defendants' ongoing actions and conduct.

127.    AGI has no adequate remedy at law to protect its substantial business and property rights, and the damages from Defendants' failure to comply with their obligations are considerable and continuing and thus not capable of ascertainment at this time.

128.    AGI is entitled to a temporary restraining order and permanent injunctive relief enforcing the obligations of the Franchise Agreement, the First Guaranty and related agreements (including the First Guaranty and Second Guaranty), and compelling Defendants to provide copies to AGI of the Customer Artwork and PrintSmith® Data associated with Defendants' AlphaGraphics® business.

129.    Unless immediate injunctive relief is granted, Defendants will continue to interfere with AGI customer relationships and will cause further irreparable injury to AGI from deprivation of the benefit and goodwill attached to AGI's AlphaGraphics® Marks.

130.    In addition to injunctive relief, AGI is entitled to damages against Defendants Jacob Eaton and Emily Jones for their tortious interference with the contractual relationships and business relationships between AGI and Defendant UG, and AlphaGraphics® customers, in an amount to be proven at trial but believed to be in excess of $75,000.

### COUNT VII: BREACH OF CONTRACT – ATTORNEYS' FEES
### (All Defendants)

131.    The allegations in preceding paragraphs 1 through 130 are hereby incorporated by reference.

132.    Pursuant to Section 19.D of the Franchise Agreement; Sections 2(a), 2(d), 4(a), and 4(b) of the First Guaranty; and Section 6 of the Second Guaranty, Defendants agreed to compensate AGI for any legal fees, attorneys' fees, and all costs and other expenses AGI incurs in enforcing the obligations of the Franchise Agreement and related agreements.

133.    AGI has commenced this action to enforce Defendants' obligations under the Franchise Agreement and related agreements, including the First Guaranty, and Second Guaranty. As a result, AGI has and will continue to incur attorneys' fees, costs, and expenses as a result of Defendants' conduct. AGI is therefore entitled to recover its attorneys' fees, costs, and expenses incurred in connection with this action, in an amount to be proven at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, AGI requests the following relief:

A.    For a temporary restraining order, an order for a preliminary injunction, and an order for permanent injunction directing that Defendants and their agents, servants, employees, attorneys, and all others acting by, through, or in concert or participation with them, cease and desist from operating their competing "Ultra Graphics" business until after the termination of the Franchise Agreement;

B.    For a temporary restraining order, an order for a preliminary injunction, and an order for permanent injunction enjoining Defendants and their agents, servants, employees, attorneys, and all others acting by, through, or in concert or participation with them, from, directly or indirectly, using, imitating, and/or otherwise infringing upon any and all of AGI's Marks;

C.      For an order directing Defendants, and all those acting by, through, or in concert and participation with them, to immediately provide copies of the Customer Artwork and PrintSmith® to AGI;

D.      For an order directing Defendants, and all those acting by, through, or in concert and participation with them, to comply with all obligations set forth in the Franchise Agreement;

E.      For an order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with the Court and serve on AGI within fifteen (15) days after service on them of an Order of injunction, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

F.      For an award against Defendants, jointly and severally, for damages AGI has sustained as a result of Defendants' conduct as herein alleged, in an amount to be proven at trial;

G.      For an award against Defendants, jointly and severally, of AGI's attorneys' fees, costs, and expenses incurred in enforcing the provisions of the Franchise Agreement and related agreements, as provided by the Franchise Agreement, First Guaranty, and Second Guaranty, in an amount to be proven at trial;

H.      For an award against Defendants, jointly and severally, of AGI's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act;

I.      For an award against Defendants for prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

J.      For an award against Defendants for prejudgment and post-judgment interest; and

K.      For such other and further relief as the Court deems just and equitable.

Dated:  August 24, 2017                         Respectfully Submitted,


                                                /s/ Jessica A. Horton
                                                Rod N. Andreason (Utah Bar No. 8853)
                                                Jessica A. Horton (Utah Bar No. 15633)
                                                **KIRTON McCONKIE**
                                                50 East South Temple, Suite 400
                                                Salt Lake City, Utah 84111
                                                Telephone: (801) 328-3600
                                                Fax: (801) 321-4893
                                                randreason@kmclaw.com
                                                jhorton@kmclaw.com

                                                and

                                                Michael R. Gray (pro hac vice forthcoming)
                                                Raymond J. Konz (pro hac vice forthcoming)
                                                GRAY, PLANT, MOOTY & BENNETT, P.A.
                                                500 IDS Center
                                                80 South Eighth Street
                                                Minneapolis, Minnesota 55402
                                                Telephone: (612) 632-3000
                                                Facsimile: (612) 632-4444
                                                michael.gray@gpmlaw.com
                                                raymond.konz@gpmlaw.com

                                                *Attorneys for Plaintiff AlphaGraphics, Inc.*

## VERIFICATION

STATE OF UTAH                  )
                                        )
COUNTY OF SALT LAKE      )

        I, Thomas Auger, am the Chief Financial Officer of AlphaGraphics, Inc. and I certify on personal knowledge that the allegations made in this Verified Complaint are true to the best of my knowledge, information, and belief.

_____
Thomas Auger

        Sworn to before me and subscribed in my presence by *LINDA TAKENAKA*, on this 23rd day of August, 2017.



LINDA TAKENAKA
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp. 8/27/2019
Commission # 684874

_____
Notary Public

4837-1826-1581 v.5.docx